RECEIVED
SEP 1 3 2011
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

DIANNA N. JONES

versus

LOUISIANA OFFICE OF MENTAL
HEALTH, DHH REGION 7

CIVIL ACTION NO. 10-0372
JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by the defendant, the State of Louisiana through the Department of Health and Hospitals. See Record Document 10. For the reasons set forth below, the defendant's motion for summary judgment is **GRANTED**.

## I. BACKGROUND

Plaintiff, Dianna Jones ("Jones"), was an employee of the Louisiana Office of Mental Health, DHH Region 7 ("the Louisiana Office of Mental Health") from September 19, 2006, to March 10, 2009. The Louisiana Office of Metal Health, DHH Region 7 has several locations. Jones was an employee of both the Red River office and the Minden office. All of her claims, however, surround incidents at the Red River office.

Jones was hired as a Social Service Counselor II. Approximately one year after

Jones was hired, she was promoted to the position of Social Service Counselor III. One of her job duties consisted of completing applications for patients to order medication from pharmaceutical companies. The medications would then be sent by the pharmaceutical company to the individual mental health clinic where the patient would receive the medication free of charge. Jones would also refer these patients to the vocational center if other types of assistance were needed.[1] Jones's employment was terminated in March of 2009.

Jones alleges that during her employment at the Red River office, several coworkers made racial slurs. Jones was the only African American employee at the Red River office and she felt that the comments were directed towards her. Specifically, Jones asserts that several of her coworkers often used the phrase "shoot a monkey" in her presence. According to Jones's deposition, one day during lunch, she and her coworkers were eating and watching the news when one of them said, "That's why I say

---

[1] Jones contends that her job entailed making the determination of which patients qualified for the free medication benefits. The Louisiana Office of Mental Health disagrees with this characterization of Jones's job duties. The defendant argues that "[p]laintiff's job as the Patient Assistance Program person at Red River did not involve any 'approval' on her part. She was only to complete applications or make follow up calls. The approval and/or denial came from the pharmaceutical companies and had nothing to do with plaintiff. Plaintiff could not force any of the pharmaceutical companies to approve anything." Record Document 10 at 3.

shoot a monkey." Record Document 10, Ex. 1 at 33, line 3.² From then on, Jones claims that "whenever [the coworker] would [sic] frustrated, or upset, or make some type of corny joke, that's when she would . . . say shoot a monkey." Id., Ex. 1 at 33, lines 10-13. Jones further contends that several of her other coworkers began using the phrase as well. See id., Ex. 1 at 36, lines 7-20.

The actual meaning of the phrase, however, has been disagreed upon by the parties. Jones asserts that "shoot a monkey" is a racial comment. She claims that when she asked another employee what it meant, she was told that one of the coworkers told her grandson to say "shoot a monkey" rather than curse. Jones, however, believed this explanation was merely an excuse. See id., Ex. 1 at 37, lines 1-6. The Louisiana Office of Mental Health, on the other hand, asserts that the phrase was used simply to avoid using profanity and had no derogatory meaning. See Record Document 10 at 4.

Jones further claims that her employment was terminated after being asked to approve certain patients to receive free medication, despite the patients' incomes being too high to qualify. See Record Document 1 at 2. The Louisiana Office of Mental Health counters that Jones mischaracterizes her job description and that she was

---

²The court notes that the defendant's motion for summary judgment and memorandum in support do not contain page numbers. This, of course, caused difficulty when the court sought to cite to pages in the defendant's motion or memorandum. Additionally, the defendant chose not to label its attached exhibits to its motion for summary judgment. However, for ease of reference, the court refers to the exhibits alphabetically.

terminated because her driver's license was suspended, she was often late to work and left early, performed outside employment during work hours, and failed to provide proper file documentation for her job duties and performance. See Record Document 10 at 1.

After her employment was terminated, Jones filed this action against the Louisiana Office of Mental Health, asserting claims of race discrimination and retaliation.[3] Thereafter, the Louisiana Office of Mental Health filed the instant motion for summary judgment.

## II. ANALYSIS

A.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

---

[3] Jones only asserted claims for race discrimination and retaliation in her complaint. She did not assert a claim of hostile work environment. However, even if she had, it would not have succeeded under the legal standards that are required for a hostile work environment claim.

[4] The court notes that the newly amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.     Race Discrimination.**

Jones alleges that the Louisiana Office of Mental Health discriminated against her because of her race. Title VII provides that "[i]t shall be an unlawful employment practice for an employer--(1) to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove employment

discrimination through direct or circumstantial evidence. See Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003). As there is no direct evidence of discrimination in this case, Jones's claims are evaluated using the clear evidentiary framework set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under this analysis, if Jones establishes a prima facie case of discrimination, the burden shifts to the Louisiana Office of Mental Health to articulate a legitimate, non-discriminatory reason for terminating her and for the other actions about which Jones complains. See id. at 802-03, 93 S. Ct. at 1825. If the Louisiana Office of Mental Health meets its burden, Jones then bears the ultimate burden of proving that the Louisiana Office of Mental Health's proffered reasons are untrue and a mere pretext for the real discriminatory purpose. See id. Jones can establish pretext by "showing that [the Louisiana Office of Mental Health's] proffered explanation is false or 'unworthy of credence.'" Laxton, 333 F.3d at 578 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097 (2000)). At the summary judgment stage, the question is not whether Jones has proven pretext, but rather whether she has raised a genuine dispute of fact with respect to pretext. See Hall v. Gillman Inc., 81 F.3d 35, 37 (5th Cir. 1996).[5] The court will

---

[5] Because there is no evidence or argument of mixed motive in this case, the court limits its analysis at the final step to whether Jones has met her burden of establishing pretext.

6

grant summary judgment for the employer if the evidence, taken as a whole, would not allow a jury to infer that the reason for the adverse employment action, at least in part, was discriminatory. See Bennett v. Total Minatome Corp., 138 F.3d 1053, 1060 (5th Cir. 1998).

### 1. Prima Facie Case.

Jones must first establish a prima facie case of race discrimination under Title VII by a preponderance of the evidence. See McDonnell Douglas, 411 U.S. at 802-04, 93 S. Ct. at 1824-25. Jones can establish a prima facie case by providing evidence that she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class; other similarly-situated, but not in her protected class, employees were treated more favorably; or she was otherwise discharged because of her race. See id.; Bryan v. McKinsey & Co., Inc., 375 F.3d 358, 360 (5th Cir. 2004).

Jones alleges that she was discriminated against based on her race because she was terminated and because the employees at the Louisiana Office of Mental Health often used the phrase "shoot a monkey." See Record Document 17. In her deposition, Jones stated: "I'm assuming this, that whenever she may want to say something discriminatory, that's when she would say shoot a monkey . . . as if it was going over my head, which it wasn't." Record Document 10, Ex. A at 33, lines 7-14.

Jones is a black female who was a Social Services counselor at the Louisiana Office of Mental Health and her employment was terminated. Thus, she is a member of a protected class who was subjected to an adverse employment action through her termination. The court will presume that she was qualified for her position. Additionally, Jones was replaced by a white female.[6] Therefore, Jones has met her burden of establishing a prima facie case of race discrimination with regard to her termination.

With regard to Jones's claim for race discrimination based upon the alleged racial slurs, the court is unable to conclude that Jones has not established a prima facie case. The Louisiana Office of Mental Health has not challenged Jones's prima facie case as to the alleged racial slurs on the basis that an adverse employment action is lacking.[7]

---

[6]The Louisiana Office of Mental Health inexplicably asserts that Jones was not "replaced" because "there was already another Patient Assistance Program person in the Shreveport Mental Health office that covered plaintiff's work load after her termination." Record Document 10. The Louisiana Office of Mental Health, however, follows that assertion with the admission that, "after advertising the position and an interview process . . ., a new Social Services Counselor was hired. The new employee was a Caucasian female." Id. The court finds that these actions constitute "replacing" Jones with a white female and concludes that the Louisiana Office of Mental Health's attempts to argue otherwise are specious at best.

[7]In lieu of arguing the required elements of a prima facie case, the Louisiana Office of Mental Health instead asserts that the alleged racial slurs "were not discriminatory in nature, or, in the alternative, were not sufficient in quantity and quality to establish a prima facie case of race discrimination." Record Document 10. While these arguments ultimately may have merit, they are not elements of a prima facie case of race discrimination.

Therefore, the court must assume, without finding, that Jones has established a prima facie case as to the alleged racial slurs.[8]

## 2. Legitimate, Non-Discriminatory Reason.

The existence of a prima facie case causes a presumption of discrimination to arise. See McDonnell Douglas, 411 U.S. at 802-804, 93 S. Ct. at 1824-25; Pratt v. City of Houston, Texas, 247 F.3d 601, 606 (5th Cir. 2001). As a result, the burden shifts to the Louisiana Office of Mental Health, who must then articulate a legitimate non-discriminatory reason for Jones's termination and the alleged racial slurs. See McDonnell Douglas, 411 U.S. at 802-804, 93 S. Ct. at 1824-25; Pratt, 247 F.3d at 606. The burden of production is satisfied "regardless of the persuasive effect of the proffered reason." Polanco v. City of Austin, Tex., 78 F.3d 968, 976 (5th Cir. 1996)

---

[8]Although the court is hard-pressed to find an adverse employment action occurred with regard to Jones's claim of race discrimination with regard to the alleged racial slurs, the Louisiana Office of Mental Health does not base its motion on this ground. Thus, the court may not enter judgment in the defendant's favor based on Jones's seeming failure to establish this prima facie element. See John Deere Co. v. Am. Nat'l Bank, Stafford, 809 F.2d 1190, 1192 (5th Cir. 1987) ("[A] district court may not grant summary judgment sua sponte on grounds not requested by the moving party."). See generally Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 519 (5th Cir. 2001) ("Adverse employment actions include only ultimate employment decisions . . . such as hiring, granting leave, discharging, promoting, and compensating.") (quotations and citations omitted). Nowhere in the the Louisiana Office of Mental Health's briefing is there contained a mention of the definition of an adverse employment action or an analysis thereof. Instead, the Louisiana Office of Mental Health asserts that "plaintiff cannot establish that she was treated differently than other similarly situated employees." Record Document 10.

(citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515-17, 113 S. Ct. 2742 (1993)).

The Louisiana Office of Mental Health contends that Jones was terminated for having a suspended license and for not having liability insurance while operating her vehicle on state time, attendance issues involving late arrivals and early departures from work, performing outside employment during work hours, and not providing proper file documentation for her job duties and performance. In support of its motion for summary judgment, the Louisiana Office of Mental Health submitted the affidavits of Jones's main supervisor, Dale Hagen ("Hagen"), and her functional supervisors at each office location. <u>See</u> Record Document 10, Exs. C and D and Record Document 25, Ex. F. Each supervisor attested to experiencing various work issues with Jones. In addition, the Louisiana Office of Mental Health submitted other documentation in support of its legitimate, nondiscrimatory reasons, including written evidence of a verbal warning Jones received regarding her attendance issues and an email from Hagen discussing issues with attendance and the conducting of personal business during office hours. <u>See</u> Record Document 18, Exs. A and B.

The Louisiana Office of Mental Health also provided the affidavit of Larken Doughty ("Doughty"), Jones's functional supervisor at the Red River office, who stated that he was aware that the phrase "shoot a monkey" had been used at the Red River office, but that the phrase was used "to avoid saying curse words and had no racial

connotation at all." Record Document 10, Ex. D. In addition, the Louisiana Office of Mental Health attached excerpts from Jones's deposition in which she admitted that when she asked a coworker what the phrase "shoot a monkey" meant, the coworker explained that she told her grandson "to say shoot a monkey rather than curse." Id., Ex. A at 37, line 2. In her deposition, Jones further stated: "But that's the excuse that I got to why they say shoot a monkey is to prevent from using profanity." Id., Ex. A at 37, lines 4-6.

### 3. Pretext.

The foregoing evidence proffered by the Louisiana Office of Mental Health satisfies its burden of providing legitimate, non-discriminatory reasons for terminating Jones's employment and for the alleged racial slurs. Accordingly, the presumption of unlawful discrimination disappears, and the burden shifts back to Jones to prove that the proffered reasons are a pretext for discrimination. See McDonnell Douglas, 411 U.S. at 802-04, 93 S. Ct. at 1824-25. The ultimate determination in the summary judgment context is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination. See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000); Reeves, 530 U.S. at 142-43, 120 S. Ct. at 2106. In making this determination, a court should consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's

explanation is false, and any other evidence that supports the employer's case. . . ." Crawford, 234 F.3d at 902 (quoting Reeves, 530 U.S. at 148-49, 120 S. Ct. at 2109). The Fifth Circuit Court of Appeals has recognized the difficulty in proving discrimination by direct evidence. See LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 449 (5th Cir. 1996). Thus, the strength of the circumstantial evidence supporting the plaintiff's prima facie case and showing the defendant's proffered reason is false may be enough to create an inference of discrimination. See Crawford, 234 F.3d at 902; Reeves, 530 U.S. at 148, 120 S. Ct. at 2109.

A mere scintilla of evidence of pretext does not create an issue of material fact in all cases. See Crawford, 234 F.3d at 902; Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296, 301 (5th Cir. 2000). The plaintiff must present "sufficient evidence to find that the employer's asserted justification is false." Crawford, 234 F.3d at 903 (quoting Reeves, 530 U.S. at 148, 120 S. Ct. at 2109). The determination is to be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination. See id.

Jones has failed to present sufficient evidence of pretext to support a reasonable inference of discrimination on the basis of race in this case, and has failed to demonstrate a genuine issue of material fact as to whether the Louisiana Office of Mental Health's employment action was illegally motivated. First, Jones contends that

she experienced hostility when she was initially transferred to the Red River office and that her functional supervisor did nothing to rectify the problem. She contends that "the hostility grew and the use of the term 'shoot a monkey' began to be used." Record Document 17. However, Jones's deposition belies this assertion. In her deposition, Jones admitted that a meeting was held by her functional supervisor, Doughty, and that the problem was "resolved at that time." Record Document 18, Ex. E at 30. Jones also received an apology from her co-worker at the time. See id. More importantly, when asked if this incident had anything to do with her race, Jones replied, "No." See id., Ex. E at 31.

In another attempt to illustrate pretext, Jones asserts that she complained to Doughty about the use of the phrase "shoot a monkey" and that after "no action was taken after her first complaint was made to Larkin [sic] Doughty, Plaintiff simply tolerated the conduct for the sake of her job and family." Record Document 17. Again, however, Jones's deposition belies her assertion. Jones testified in her deposition that she did not report anything to her supervisors about the alleged racial slurs. See Record Document 10, Ex. A at 68, lines 6-9.

Next, Jones attempts to rebut the Louisiana Office of Mental Health's legitimate, nondiscriminatory reasons by asserting that she rectified the problem with her driver's license when it was brought to her attention. However, her corrective action does not

negate the fact that a job performance issue with her license occurred that required supervisors to intervene. Jones further attempts to meet her burden by attaching an email exchange between a coworker at the Red River office and Jones's supervisor referring to the fact that Jones had called in sick that day, to prove that she did not have issues of "not calling in when sick." See Record Document 17, Ex. 6. However, one email exchange does not create pretext with regard to overall attendance issues or rebut the other concerns about attendance.

Jones then attempts to rebut the Louisiana Office of Mental Health's legitimate, nondiscriminatory reasons by asserting that her supervisor approved her late arrivals and early departures to the Minden office because she lived out of town and had to commute. However, the summary judgment evidence contradicts this assertion. While it is true that Jones was allowed to commute and was given a travel time allowance to do so, the summary judgment evidence indicates that Jones was verbally warned that her departure at 3:00 and timing out at 3:30 was "unacceptable and could be falsifying legal documents." Record Document 18, Ex. A ("Your working hours are from 8:00AM to 4:30PM. You are allowed 1 hour travel to arrive and 1 hour travel to leave."). Jones's supervisor further attested in his affidavit that he had to instruct Jones "that she could not forego her lunch break and leave thirty (30) minutes earlier than required" and that when "these problems did not resolve, he revisted the

attendance issue with plaintiff in December of 2008." Id., Ex. D.

With regard to personal business or outside work while at the office, Jones asserts that the Louisiana Office of Mental Health has no policy against outside employment. Again, however, the summary judgment evidence indicates that Jones's supervisors perceived her conducting personal business to be a problem because Jones was doing so during her working hours of the Louisiana Office of Mental Health.

Finally, Jones takes issue with the Louisiana Office of Mental Health's legitimate, nondiscriminatory reason that Jones's files did not contain proper documentation. Jones simply asserts that her "charts were documented the way she was trained to document." Record Document 17, Jones Affidavit. This self-serving argument does not illustrate pretext.

Regardless of Jones's explanations or recall of how the events transpired, the fact remains that her supervisors perceived a problem with her performance. Jones has offered no proof that anything other than a perception by management of unsatisfactory job performance motivated her termination. She has offered no evidence that her main supervisor did not believe the accounts from her functional supervisors of the issues with her attendance, her performance or doing personal business while at work. Instead, Jones simply disputes the circumstances of each event. Jones has failed, however, to put forth evidence that demonstrates the Louisiana Office of Mental

Health's reasons were false or were a pretext for discrimination.

Jones's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. See <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994). She has brought forth nothing but conclusory allegations to show that her termination was based upon any reason other than the ones articulated by the Louisiana Office of Mental Health. Her allegations are clearly insufficient to defeat the Louisiana Office of Mental Health's motion for summary judgment. See <u>Bynam v. FMC Corp.</u>, 770 F.2d 556, 576 (5th Cir. 1985); <u>Richardson v. Oldham</u>, 12 F.3d 1373, 1378 (5th Cir. 1994) (holding that "[m]ere conclusory allegations are not competent summary judgment evidence . . . ."). In order to survive summary judgment, Jones must demonstrate that the Louisiana Office of Mental Health acted with discriminatory intent. See <u>Mayberry v. Vought Aircraft Co.</u>, 55 F.3d 1086, 1091 (5th Cir. 1995). This she has not done.

Title VII does not protect an employee against unfair employment decisions. Instead, it protects against employment decisions based upon discriminatory animus. See <u>Nieto v. L&H Packing Co.</u>, 108 F.3d 621, 624 (5th Cir. 1997). The Louisiana Office of Mental Health management concluded that Jones's conduct was not acceptable based upon an accumulation of job-related problems. The Louisiana Office of Mental Health can make an employment decision that may be perceived by some as incorrect, but if that decision is based upon a good faith belief with no discriminatory

16

influences, as happened with the decision to terminate Jones's employment, then the court will not question the validity of the reasons. See Mayberry, 55 F.3d at 1091. The complaints about Jones's various job performance and attendance issues were the source of this employment action, and Jones has provided no evidence that the decision to terminate her was motivated by race. Thus, her claim for race discrimination based upon her termination must be dismissed.

Jones has also submitted undisputed evidence that other employees at the Red River office used a phrase that she perceived to be a racial slur.[9] However, Jones has provided no evidence that the perceived racial slurs were uttered by an official who had authority to terminate her or by anyone with influence over the official decisionmaker. Thus, although the content of the remark could potentially reveal racial animus on the part of the speaker, the court considers the perceived racial slurs as stray remarks, and not evidence of race discrimination. See Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226 (5th Cir. 2000) (To be evidence of discrimination, remarks, among other criteria, must be made by one "principally responsible" for a plaintiff's termination or be uttered by someone who "had influence or leverage over the official decisionmaker."); Palasota v. Haggar Clothing Co., 342 F.3d 569, 578 (5th Cir. 2003) (same). In addition, Jones has not shown that the Louisiana Office of Mental Health's

---

[9]Notably, Jones admitted that she did not complain about the use of this phrase to any of her supervisors.

proffered explanation is false or unworthy of credence. Accordingly, Jones's claim of race discrimination based on the alleged racial slurs must be dismissed.[10]

## C. Retaliation.

Jones also argues that she was terminated following her refusal to approve certain clients for free medication. Thus, she contends that the Louisiana Office of Mental Health retaliated against her. To present a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. See McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007).

Protected activity is "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." Mota, 261 F.3d at 519. Jones clearly did not

---

[10]Again, for the sake of clarity, the court notes that Jones never asserted that the use of the phrase "shoot a monkey" resulted in a hostile work environment. However, to prevail on a hostile work environment claim, Jones must have subjectively perceived the harassment as severe or pervasive, and this subjective perception must be objectively reasonable. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 114 S. Ct. 367 (1993). Whether an environment is "hostile" or "abusive" is determined by looking at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. See id. Furthermore, the "mere utterance of an . . . epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment." Id. The infrequent use of the phrase "shoot a monkey" would not have merited a finding of a hostile work environment under these standards.

18

participate, nor did she allege that she participated, in any protected activity as defined above. She simply asserts that she felt "pressured" to make requests for medication that she did not feel were merited. Thus, Jones has not met a key element of her prima facie case and her claim for retaliation must be dismissed.[11]

### III. CONCLUSION

Viewing all of the summary judgment evidence in a light most favorable to Jones, the court finds that no reasonable factfinder could infer race discrimination or retaliation from the evidence set forth in this case. Accordingly, the Louisiana Office of Mental Health's motion for summary judgment is **GRANTED**. All of Jones's claims against the Louisiana Office of Mental Health are **DISMISSED WITH PREJUDICE.**

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this 15th day of September, 2011.

_____
JUDGE TOM STAGG

---

[11]Assuming <u>arguendo</u> that Jones had shown that she participated in a protected activity, she also has not cited any evidence which satisfies the third element of her prima facie case, the causal link requirement. Instead, Jones contends in her affidavit that she was "terminated because [she] stood up to the nursing staff at Red River." Record Document 17, Jones Affidavit. Notably, Jones does *not* assert that her termination had anything to do with her race.